UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------
In re

NORTHSTAR DEVELOPMENT CORP.         08-10689 B


         Debtor                  <u>DECISION & ORDER</u>
----------------------------------------------------
MARK S. WALLACH AS TRUSTEE IN BANKRUPTCY
FOR NORTHSTAR DEVELOPMENT CORP.,

         Plaintiff

      v.                      AP 08-1074 B

GERALD A. BUCHHEIT, JR.,

         Defendant
----------------------------------------------------


                  Zdarsky, Sawicki et al.
                  Mark J. Schlant, Esq., of counsel
                  K. Michael Sawicki, Esq., of counsel
                  298 Main Street, Suite 404
`                  Buffalo, New York 14202
                  Attorneys for Plaintiff Mark S. Wallach

                  Damon Morey LLP
                  William F. Savino, Esq., of counsel
                  Bernard Schenkler, Esq., of counsel
                  The Avant Building, Suite 1200
                  200 Delaware Avenue
                  Buffalo, New York 14202
                  Attorneys for Defendant Gerald A. Buchheit, Jr.


Bucki, Chief U.S.B.J., W.D.N.Y.

        In this adversary proceeding, the Chapter 7 trustee seeks two forms of

relief: first, the avoidance of transfers to the principal of the debtor; and second, the

subordination of his claims to the claims of other unsecured creditors.  The demand for

avoidance speaks to the fine distinctions between a fraudulent conveyance under section

548 of the Bankruptcy Code and a similar cause of action under New York's version of

the Uniform Fraudulent Conveyance Act.  The central issues include whether a fraudulent

conveyance can arise from payments made on account of secured indebtedness.  With

regard to the demand for equitable subordination, the parties contest both the basis for relief and the scope of an appropriate remedy.

Northstar Development Corp. is a former owner of the Statler Towers, an architecturally significant landmark in the City of Buffalo, New York. While managing this building, Northstar retained Contract Specialists International, Inc., to provide janitorial services. Northstar owed $38,839.67 to Contract Specialists on August 18, 2006, when Northstar sold the Statler Towers to BSC Development BUF, LLC. Never receiving payment for its outstanding balance, Contract Specialists commenced an action against Northstar in the New York State Supreme Court for Erie County. This action resulted in the entry of judgment on June 29, 2007, for the total sum of $42,288.36, including interest and costs. When Contract Specialists received no satisfaction of the judgment, it commenced a second action against Northstar and its sole shareholder, Gerald A. Buchheit, Jr., to recover the outstanding judgment through the avoidance of allegedly fraudulent transfers to the corporation's principal. However, on February 21, 2008, before the state court could reach a decision on the fraudulent transfer complaint, Northstar Development Corp. filed a petition for relief under Chapter 7 of the Bankruptcy Code.

On March 26, 2008, the Chapter 7 trustee removed the fraudulent conveyance action to Bankruptcy Court. The trustee has twice amended the complaint, which now seeks to recover the transferred funds for the benefit of all creditors. In its answer, the defendant has asserted a counterclaim seeking the allowance of his claim in the amount of $3,301,989.77. The trustee then filed a reply in which he requests that the defendant's claim be equitably subordinated to the claims of all other creditors.

The parties stipulated to many of the essential facts, and a trial on the remaining factual disputes was held on May 24 and 25 of 2011. At the conclusion of testimony, the court granted permission to the parties to submit post-trial briefs. Having

carefully considered the arguments of counsel, this court now makes the findings of fact and conclusions of law that are incorporated into this opinion.

In its complaint, the trustee seeks to recover distributions totaling $1,001,337.02, together with interest and legal costs. This sum incorporates three categories of payment from the debtor to Gerald A. Buchheit, Jr. The first occurred on August 18, 2006, when Northstar sold the Statler Towers for a stated consideration of $3,500,000. As part of these proceeds, two checks totaling $809,419.76 were delivered to Buchheit. The closing statement lists both checks with the notation: "Gerald A. Buchheit – Mtg. Sat." Consistent with this statement, Buchheit executed two instruments entitled "Discharge of Mortgage." The first purported to discharge a mortgage given to Buchheit on November 22, 1993, to secure a principal obligation of $1,000,000, together with interest. The second instrument purported to discharge a mortgage that secured an obligation, in the original amount of $1,200,000, that Buchheit had acquired by assignment in 2006.

The second form of disbursement involved the release of $89,401.31 to Gerald A. Buchheit, Jr. on August 23, 2006, from an escrow account holding a deposit that BSC Development BUF, LLC., had paid when it executed the contract to purchase the Statler Towers. At closing, the purchaser received appropriate credit for the full deposit in the amount of $300,000. The transfer of title satisfied the conditions for its release from escrow. Pursuant to Northstar's instructions, the escrow agent then delivered a portion of this fund to Buchheit.

Thirdly, between March 7, 2006, and February 16, 2007, Buchheit received seven payments totaling $102,515.95, on account of outstanding unsecured obligations. The majority of these funds derived from a refund of real property taxes that the debtor had paid prior to the sale of the Statler Towers. At the start of the trial of the present case, Buchheit's counsel reported that his client had agreed to repay this

$102,515.95 into the bankruptcy estate.  However, he did not concede liability for either interest or legal fees.

The parties have stipulated that Northstar was insolvent on the day prior to the closing of its sale of the Statler Towers and at all times thereafter.  Gerald Buchheit was at all relevant times an insider of the debtor.  The trustee contends that as an insider, Buchheit cannot qualify as a good-faith recipient of payment.  Consequently, in the trustee's view, all of the transfers were fraudulent and avoidable under the Bankruptcy Code and various provisions of the Debtor and Creditor Law of New York. Buchheit responds that except with respect to funds that he has voluntarily returned to the debtor, the disputed transfers represented payment on account of secured obligations.  In as much as the underlying secured obligations were valid, Buchheit believes that the payments represent not a fraudulent conveyance but the satisfaction of an unavoidable obligation.

Discussion

Fraudulent Conveyance Claims

Chapter 5 of the Bankruptcy Code establishes the avoidance powers of a trustee.  Chief among these are the power under 11 U.S.C. §547 to avoid preferences and the power under 11 U.S.C. §548 to avoid fraudulent conveyances.  But when the particular requirements of these sections preclude recovery, trustees may turn to the alternative provision of 11 U.S.C. §544(b)(1), which permits the advancement of claims that an unsecured creditor could have asserted under applicable state law.

In the present instance, the trustee possesses no valid claim under either section 547 or section 548 of the Bankruptcy Code.  Section 547 allows a trustee to avoid preferential payments made to insiders within one year of the bankruptcy filing.  Here, the most recent payment to Buchheit occurred on February 16, 2007, a date that preceded, by more than one year, the bankruptcy filing on February 21, 2008.  With respect to an allegedly fraudulent conveyance, section 548 allows a trustee to avoid

transfers made within two years of bankruptcy and that are either actually or constructively fraudulent.  As defined by section 548(a)(1)(B), constructive fraud can arise in any of four circumstances.  For example, a constructively fraudulent transfer may occur when, as stipulated in the present instance, a debtor "was insolvent on the date that such transfer was made or such obligation was incurred."  11 U.S.C. §548(a)(1)(B)(ii)(I).  However, an event of constructive fraud will impose liability only when a debtor receives "less than a reasonably equivalent value in exchange for such transfer or obligation."  11 U.S.C. §548(a)(1)(B)(i).  Northstar satisfied outstanding obligations of value equal to the payments that Gerald Buchheit received.  Consequently, liability under section 548 of the Bankruptcy Code can here arise, if at all, only upon a showing of an actually fraudulent intent.

          Pursuant to 11 U.S.C. §548(a)(1)(A), a trustee may avoid a transfer that the debtor makes "with actual intent to hinder, delay, or defraud" an existing or future creditor.  In contrast to the requirements for constructive fraud, an actual intent to hinder, delay, or defraud will compel the avoidance of a transfer even if given in exchange for reasonably equivalent value.  However, the trustee carries the burden to show, by a preponderance of evidence, that the debtor effected a transfer with the requisite intent.  Here, the trustee fails to sustain that burden.  The proof at trial established the existence of a legitimate debt to Buchheit and that Buchheit deferred substantial payment until after a sale of the Statler Towers.  Even now, Buchheit remains the largest creditor in this case.  For an insolvent debtor, the use of limited resources to pay a particular debt will necessarily limit the ability to pay other obligations.  To assure fairness in distribution, section 547 of the Bankruptcy Code allows the recovery of payments made during the applicable preference period.  The fraudulent conveyance provisions of section 548 stand apart from the preference law, and serve not as an extension of the preference timetable.  Consequently, the fact of an insider payment shows only an intent to pay that insider, and does not by itself establish an intent to

hinder, delay, or defraud some other creditor.   Rather, to establish a fraudulent conveyance, a trustee must present some other evidence of intent.

In attempting to show an actual intent to hinder, delay or defraud, the trustee presented testimony that an employee of the debtor may have promised that Contract Specialists would be paid in the future.  Among experienced business people, such everyday assurances serve to mislead no one.  Without funds to pay Contract Specialists at that time, Northstar Development Corp. expressed a mere hope that it would someday achieve an ability to pay.  Such representations have no obvious relevance to the issue that this court must decide, namely whether the debtor's subsequent transfer to Buchheit was made with an actual intent to hinder, delay, or defraud some other creditor.  Without more, the trustee fails to sustain his burden of proof.  Accordingly, the trustee establishes no basis for imposing liability under section 548 of the Bankruptcy Code.

Pursuant to 11 U.S.C. §544(b), the trustee may also assert causes of action under Article 10 of the New York Debtor and Creditor Law.  Like section 548 of the Bankruptcy Code, the Debtor and Creditor Law allows the avoidance of transfers that satisfy the statutory requirements for either actual or constructive fraud.  The nuances of the statute are different, however, and will impose a slightly different standard of liability.  Also, Debtor and Creditor Law §276-a allows a trustee to recover legal fees in those instances where the fraudulent conveyance is made and received "with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors."

At least with regard to the present dispute, the standard of actual intent under the New York Fraudulent Conveyance statute is identical to that in section 548 of the Bankruptcy Code.  Both Debtor and Creditor Law §276 and 11 U.S.C. §548(a)(1)(A) provide, without regard to fairness of consideration, that a trustee may avoid a transfer made with "actual intent" "to hinder, delay, or defraud."  For the same reasons recited

in our discussion of liability under section 548, the trustee has failed to sustain his burden to demonstrate actual intent for purposes of section 276. Consequently as well, Buchheit has no liability for the reimbursement of legal fees that the trustee might have incurred to set aside a transfer made with an actual intent to hinder, delay or defraud.

The New York Debtor and Creditor Law applies a standard for constructive fraud that is generally similar to that in section 548 of the Bankruptcy Code, but with subtle differences. Much like the provisions of 11 U.S.C. §548(a)(B)(ii)(I), for example, Debtor and Creditor Law §273 states that "[e]very conveyance made . . . by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made . . . without a fair consideration." However, an important distinction involves the concept of consideration. To avoid a constructively fraudulent transfer under section 548 of the Bankruptcy Code, a trustee must show that the debtor "received less than a reasonably equivalent value in exchange for such transfer." 11 U.S.C. §548(a)(1)(B)(i). On the other hand, to establish a fraudulent conveyance under any of the constructive fraud provisions of the New York State statute (Debtor and Creditor Law §§ 273, 273-a, 274 and 275), the trustee needs only to demonstrate the absence of "a fair consideration." As defined by Debtor and Creditor Law §272(a), fair consideration requires not only an exchange for fair equivalent or proportionate value, but also that the transfer be "in good faith." Even when a debtor receives equivalent value for his transfer, therefore, New York law will allow a bankruptcy trustee to avoid a constructively fraudulent transfer that is made other than in good faith.

Here again, the parties have stipulated to Northstar's insolvency at the time of nearly all of the payments to Buchheit. As consideration for these payments, Buchheit cancelled an identical amount of indebtedness. Still, with any absence of good faith, the New York Debtor and Creditor Law presumes an absence of fair consideration and will allow the trustee to avoid the transaction.

As a general rule in New York for purposes of fraudulent conveyance law, the payment of an unsecured debt to an insider is deemed to be without good faith, and therefore lacking in fair consideration.  In *Farm Stores, Inc. v. School Feeding Corp.*, 64 N.Y. 2d 1065, 1066-67 (1985), the Court of Appeals affirmed a judgment avoiding this kind of fraudulent conveyance, "for the reasons stated in the opinion by Justice Moses M. Weinstein." Writing for a unanimous panel of the Appellate Division, Justice Weinstein held "that preferential transfers to directors, officers and shareholders of insolvent corporations in derogation of the rights of general creditors do not fulfill the good-faith requirement of the Debtor and Creditor Law."  102 A.D.2d 249, 254 (1984).  Conse-quently, "[t]he shareholders cannot be considered bona fide purchasers for fair consideration who are immune from liability as transferees of fraudulently conveyed property, as the record reveals that they were aware that they were receiving money from [the debtor] when the claims of the general creditors had not been completely paid and, in fact, they consented to such a distribution of the corporate funds." *Id.* at 255-56.

Presumably in recognition of the holdings in *Farm Stores, Inc. v. School Feeding Corp.* and in other similar cases, the defendant's counsel recommended that Buchheit return the various payments that he had received on account of unsecured obligations.  The more contentious issue in the present instance is whether a fraudulent conveyance may also arise from the payment of a secured obligation.

The essence of the decision in *Farm Stores, Inc. v. School Feeding Corp.* was that New York's Debtor and Creditor Law allows the avoidance of "preferential transfers to directors, officers and shareholders of insolvent corporations." 101 AD2d at 254.  As a general rule, however, no preference occurs upon the payment of a secured debt.  For a preference to arise, a creditor must realize some improvement in position. *See* 11 U.S.C. §547(c)(5); 5 COLLIER ON BANKRUPTCY ¶547.04[5] (ALAN N. RESNICK & HENRY J. SOMMER, eds.-in-chief, 16th ed., 2010).  The satisfaction of secured debt causes no

improvement of position, in that the transfer represents only an exchange of value for the equivalent release of collateral.

Even if special circumstances could indicate bad faith in the pay-down of secured indebtedness, the present facts suggest only a transfer for fair or equivalent value and in good faith.  As the holder of a legitimate secured obligation, Buchheit possessed a first claim against sale proceeds.  Because this claim took precedence over unsecured claims, Buchheit had no obligation to release his outstanding liens for other than fair consideration.  But no sale of the debtor's real estate would occur without a release or discharge of the mortgages.  Buchheit granted such discharges in the ordinary course of a closing on the sale of the Statler Towers.  Indeed, he accepted less than the amount due on the obligations for which the mortgages were given as security. Therefore, with regard to payment on account of mortgages held by Buchheit, the evidence affirmatively shows a level of good faith sufficient to establish a fair consideration for the disputed transaction.

Five days after the sale of the Statler Towers, the debtor's attorney paid $89,401.31 to Buchheit from funds that he held as part of the purchaser's initial deposit. The trustee contends that because Buchheit had already released the mortgage discharges at the time of closing, this further payment represented an avoidable distribution on account of unsecured debt.  Buchheit responds that the closing operated to release any conditions for the escrow of the deposit, so that its partial distribution to Buchheit can relate back to the closing and the simultaneous discharge of outstanding liens.

Because the discharges contain no recitation of the amount of consideration being applied to either of the outstanding mortgage balances, the court has received no definitive proof regarding the application of the escrow funds that were released to Buchheit.  Nonetheless, the mortgages secured a balance of indebtedness greater than the total amount paid to Buchheit at closing and from escrow.  All of these

payments derived from proceeds from the sale of the mortgaged collateral. The timing of the escrow distribution also suggests that it was part of the closing process, in as much as counsel completed payment to Buchheit within only three business days of the transfer of title. For these reasons, the court finds it more probable than not that Buchheit and the debtor intended to apply the escrow on account of the outstanding mortgage balances. Accordingly we must infer an intent to apply the distribution to the secured indebtedness. *See Deere & Co. v. Contella (In re Contella)*, 166 B.R. 26 (Bankr. W.D.N.Y. 1994). In any event, the trustee carries the burden to prove the necessary elements of a fraudulent conveyance by a preponderance of evidence. Because the trustee fails to show that the distribution from escrow was anything other than part of the consideration for the discharge of outstanding mortgages, we must view the distribution as a good faith payment on account of a secured debt.

Altogether, the trustee's complaint seeks to avoid transfers totaling $1,001,337.02. Of this amount, $898,821.07 was paid as consideration for the discharge of two outstanding mortgages, either directly at closing or as a distribution from an escrow released upon closing. As a good faith payment on a legitimate secured obligation, these payments do not constitute a fraudulent conveyance that the trustee can avoid. On the other hand, the New York Debtor and Creditor Law would allow the trustee to avoid the debtor's preferential payment of unsecured liabilities owed to an insider. Apparently conceding this position, Buchheit has already reimbursed the principal amount of $102,515.95. In addition, however, the trustee may recover interest from the date of demand for repayment to the date that reimbursement was actually received, at a rate set in accord with our holding in *CNB International, Inc. v. Kelleher (In re CNB International, Inc.)*, 393 B.R. 306, 336 (Bankr. W.D.N.Y. 2008), *aff'd as to this issue*, 440 B.R. 31, 46-47 (W.D.N.Y. 2010). In the present instance, because this

is an action that the trustee removed from state court, the right to interest will relate back to the original demand that Contract Specialists made to Gerald Buchheit.

Although the court will grant judgment for the amount of accrued interest on the principal sum of $102,515.95, the present record provides no indication of either the date of demand or the date of payment. The parties are directed to stipulate to these dates or to an acceptable amount of interest. If unable to reach such agreement, they should inform the court, which will then schedule such further hearings as may be warranted. Judgment for the plaintiff will enter thereafter.

## Equitable Subordination

Section 510(c) of the Bankruptcy Code confirms the authority of this court to apply the doctrine of equitable subordination. In relevant part, this section provides that "after notice and a hearing, the court may – (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." In *United States v. Noland*, 517 U.S. 535 (1996), the Supreme Court accepted the position of the Fifth Circuit, "that the application of the doctrine was generally triggered by a showing that the creditor had engaged in 'some type of inequitable conduct.'" 517 U.S. at 538, *quoting In re Mobile Steel Co.*, 563 F.2d 692, 700 (1977). Further, subordination requires the satisfaction of two additional conditions: "that the misconduct have 'resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant,' and that the subordination 'not be inconsistent with the provisions of the Bankruptcy Act.'" 517 U.S. at 538-39, *quoting In re Mobile Steel Co.*, 563 F.2d at 700.

The trustee contends that Buchheit acted inequitably in two respects: first, by allowing the debtor to operate with inadequate capitalization; and second, by

violating a fiduciary obligation to avoid self-dealing and to safeguard the interests of all creditors. Asserting that such conduct unfairly advanced the interests of Buchheit to the detriment of other unsecured creditors, the trustee seeks a subordination of Buchheit's claims against the bankruptcy estate. Buchheit denies responsibility for any undercapitalization. He argues that his proof of claim properly seeks to recover legitimate loans to the debtor and that he worked continuously and in good faith to advance the development of the Statler Towers.

The parties have stipulated that Gerald A. Buchheit, Jr., is the sole shareholder and principal of the debtor. This insider status compels the court to review his actions with rigorous scrutiny. *Pepper v. Litton*, 308 U.S. 295, 306 (1939). Nonetheless, the trustee will still carry the initial burden to establish the necessary elements of his cause of action for equitable subordination. "Once the trustee meets this initial burden, the burden then shifts to [the insider] to demonstrate its good faith and the fairness of its conduct." *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)*, 926 F.2d 1458, 1465 (5th Cir. 1991).

The evidence at trial failed to establish such an inadequacy of capitaliza-tion as would compel equitable subordination. Sometimes even a reasonably capitalized enterprise will become insolvent as a consequence of unsustainable losses or adverse events. For this reason, with regard to capitalization, we must measure adequacy not in hindsight, but only through the recreation of a forward looking perspective. The issue is whether the debtor's capitalization was reasonable at the time that the defendant initiated the enterprise or endeavor that is now the subject of dispute. *In re Bentley-Russell, Inc.*, 201 B.R. 354 (Bankr. W.D.N.Y. 1996). Northstar Development Corp. became the owner of the Statler Towers on November 9, 1998, and retained title to the property until its sale to BSC Development BUF, LLC, on August 18, 2006. Thus, its

capital sufficed to sustain operations for almost eight years.   The testimony established a reasonable expectation that the debtor would sell the Statler Towers for a price sufficient to satisfy all creditors.  Indeed, the debtor had previously signed a contract to sell the property for $7,500,000.  Unfortunately, the sale did not close and the debtor was ultimately compelled to accept a consideration of only $3,500,000.  Had the property sold for the higher amount, however, the debtor would have derived sufficient funds to pay creditors.  In the context of these legitimate prospects, we cannot hold that the debtor and its principal operated with inadequate capital.

What compels equitable subordination in this case is not the operation of the debtor's business, but decisions made after the termination of business activity.  As an officer and director of Northstar Development Corp., Gerald Buchheit assumed the role of a fiduciary.  In *Pepper v. Litton*, 308 U.S. 295, 307 (1939), the Supreme Court observed that this "standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation – creditors as well as stockholders." Indeed, for insolvent debtors, a director's fiduciary obligation becomes a duty to maximize a fair and equitable distribution among all creditors.  In their fiduciary capacities, officers and directors must act even-handedly and in good faith.  *See* BUS. CORP. LAW §717(a)(McKinney 2003).  Thus, officers may not divert unto themselves the opportunities that should fairly inure to the benefit of the corporation's entire community of interests, which for an insolvent corporation must include every creditor.  *See* HARRY G. HENN, LAW OF CORPORATIONS, §§ 231 - 242 (2nd ed. 1970).

The parties have stipulated that Northstar was insolvent on the day prior to the closing of its sale of the Statler Towers on August 18, 2006.  Nonetheless, between September 1, 2006 and February 16, 2007, Buchheit caused the debtor to disburse more than $100,000 to himself on account of unsecured obligations.  These payments inured

exclusively to the benefit of Buchheit, and were not part of a proportional distribution among all unsecured creditors. Thus, they would have constituted a preference under section 547 of the Bankruptcy Code, but for the fact that the debtor delayed the filing of its petition until a date more than one year after Buchheit's receipt of funds. In at least two respects, therefore, Buchheit violated the fiduciary obligations that he owed to creditors. First, he caused the debtor to distribute its limited cash resources to himself rather than proportionately among all creditors. Second, by causing the debtor to delay the filing of its bankruptcy petition, Buchheit insulated himself from potential liability on a cause of action that might have inured to the benefit of other creditors to whom he owed a duty of good faith.

In failing to fulfill his fiduciary obligations as a director and officer of Northstar Development Corp., the defendant engaged in the type of conduct that would justify the equitable subordination of his claims. Further, this inequitable conduct gave to the defendant an unfair advantage over other creditors who were similarly attempting to recover legitimate claims. The defendant also has suggested no persuasive reason to believe that equitable subordination would here violate any provision of the Bankruptcy Code. Accordingly, pursuant to 11 U.S.C. §510(c)(1), this court may subordinate "all or part" of the claim of Gerald Buchheit to "all or part" of other allowed claims.

One learned treatise has observed that "a claim should be subordinated only to the extent necessary to offset the harm suffered." 4 COLLIER on BANKRUPTCY, ¶510.05[5][a] (ALAN N. RESNICK & HENRY J. SOMMER, eds.-in-chief, 16th ed. 2009). In the present instance, Gerald A. Buchheit, Jr., has submitted a proof of claim for $3,219,023.52, a sum which represents more than 95.5 % of all unsecured claims that have been filed to date. Therefore, unless subordinated, the defendant's claim would

realize nearly the entire amount that the trustee might distribute from any recovery on his causes of action against the defendant himself. Equity demands an outcome more fair than any such cyclical regurgitation. In violation of his fiduciary obligations as an officer and director of the corporation, the defendant attempted to secure an advantage over all other creditors. In fairness, these other creditors should now receive a similar advantage over the defendant. Accordingly, with one adjustment, the court will subordinate the defendant's outstanding claim to all other filed claims. It appears, however, that the defendant's existing claim does not include a further claim for a distribution on account of the trustee's recovery in this adversary proceeding. Any moneys thusly recovered are no longer tainted. The court will, therefore, allow Buchheit to file a supplemental claim for the amount that he will have paid to the trustee. Equitable subordination will not extend to this supplemental claim, so that Buchheit may receive a distribution on its amount proportionately with distributions to other creditors.


Conclusion

        The trustee's complaint asserts eight causes of action to avoid various transfers. For the reasons stated herein, the court will grant judgment to the plaintiff only for the amount of accrued interest from the date of demand to the date of payment of the principal sum of $102,515.95. As to all other demands in the trustee's complaint, judgment is granted to the defendant. With respect to the counterclaim seeking a declaration allowing an unsecured claim, the court will grant the trustee's request to equitably subordinate the defendant's existing claim to all other unsecured claims. Leave is granted to the defendant to file a supplemental claim for the amount of any payment to the trustee. Any such claim will be allowed as a general unsecured without subordination.

The amount of the trustee's judgment for accrued interest remains undetermined at this time. The parties are directed to stipulate either to an acceptable amount of interest or to the facts needed to calculate the amount of interest. If unable to reach a stipulation, they should inform the court, which will then schedule such further hearings as may be warranted. Final judgment will enter thereafter.

So ordered.

Dated:          Buffalo, New York           /s/        CARL L. BUCKI
                February 10, 2012            Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.